*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

In re                        )     Case No.  10-27435-E-7

THOMAS A. GASSNER,

          Debtor.

_____

KIMBERLY J. HUSTED, in her capacity    Adv. Proc. No. 19-2006
as Trustee for the Bankruptcy Estate of    Docket Control No.  SGB-2
Thomas A. Gassner,

         Plaintiff,

v.

MEPCO LABEL SYSTEMS, a California
Corporation, et al.,

         Defendants.

_____

**This Memorandum Decision is not appropriate for publication.
It may be cited for persuasive value on the matters addressed.**

**MEMORANDUM OPINION AND DECISION**

      This Adversary Proceeding and related adversary proceeding *Gassner v. Gassner*, 19-2038 ("Related Adversary Proceeding"), arise out of the Chapter 7 bankruptcy case filed by Thomas A. Gassner ("Debtor"), E.D. Cal, Case No. 10-27435 ("Bankruptcy Case").  A Notice of Death of Debtor was filed on November 7, 2017 in the Bankruptcy Case.  10-27435; Notice, Dckt. 123.  The date of Debtor's death is stated in the Notice to be October 5, 2017.  *Id.*; Notice ¶ 5.  A copy of Debtor's death certificate is filed as Exhibit A with the Notice.  *Id.*; Dckt. 126.

      This Adversary Proceeding, the Related Adversary Proceeding concern assets of the

Thomas A. Gassner Trust ("TAG Trust"), which consists primarily of 2,000 shares of Mepco Label, LLC stock ("MEPCO Stock") or any portion thereof, and whether such shares are property of the Bankruptcy Estate in Debtor's Bankruptcy Case.

Mepco Label Systems ("Defendant MEPCO") AND Carol and Alfred Gassner ("Defendant-Trust Settlors"), collectively Defendant-Movants, have filed a Motion for Summary Judgment seeking a summary determination that Kimberly Husted, the Chapter 7 Trustee ("Plaintiff-Trustee") of the Thomas Gassner bankruptcy estates ("Bankruptcy Estate") is not entitled to the assets of the Thomas A. Gassner Trust ("TAG Trust"), which consists primarily of 2,000 shares of MEPCO Stock. Further, that at most (but not agreed to) the Plaintiff-Trustee could claim not more than 25% of the value of the TAG Trust, not 25% of the MEPCO Stock. The Plaintiff-Trustee is the Chapter 7 Trustee in the voluntary Chapter 7 case filed by Debtor.

The other defendant to this Adversary Proceeding is Laura Strombom, Trustee of the TAG Trust ("Defendant-Strombom Trustee"). Defendant-Strombom Trustee is not a party to the present Motion.

As addressed below, the Motion is denied without prejudice.

## SUMMARY OF COMPLAINT

The Plaintiff-Trustee commenced this Adversary Proceeding on January 7, 2019, in which the Plaintiff states three causes of action (denominated as "Counts") "Counts." The allegations in the Complaint are summarized by the court as follows (identified by paragraph number of the Complaint, Dckt. 1):

6.   On or about December 30, 1992, the Trust Settlors created an irrevocable trust, the TAG Trust, for which the Debtor was a beneficiary.

7.   The TAG Trust provides that upon Debtor reaching the age of 50 years old, the TAG Trust terminates and all assets of the TAG Trust are to be disbursed to Debtor. The assets of the TAG Trust include 2,000 shares of MEPCO Stock, which is 33 1/3% of all outstanding MEPCO Stock.

The Debtor turned 50 years of age on July 2, 2016.

8.   Defendant-Strombom Trustee is the trustee of the TAG Trust.

9.   Debtor commenced his voluntary Chapter 7 case on March 25, 2010. Debtor was granted his discharge on July 12, 2010, and the case was subsequently closed.

10.     After the Bankruptcy Case closed, Debtor sought counsel to commence litigation asserting his right to distribution of all of the TAG Trust assets. The Trust Settlors commenced litigation in the California Superior Court, Probate Division on May 10, 2016, ("State Court Action") to: (1) modify the TAG Trust, (2) suspend distribution of the TAG Trust Assets, and (3) requested authorization to approve a sale of the TAG Trust assets, which the Debtor opposed, asserting to be the sole beneficiary of the TAG Trust.

11.     Debtor's counsel in connection with the State Court Action informed Debtor that Debtor had failed to list his interests in the TAG Trust in his Bankruptcy Case. On February 2, 2017, Debtor had his Chapter 7 bankruptcy case reopened and the Plaintiff-Trustee was appointed as Chapter 7 trustee.

12.     On February 10, 2017, Debtor filed an amended Schedule identifying his interest in the TAG Trust.

A review of the file in Debtor's Chapter 7 case includes the Amended Schedule B, which lists the following previously not scheduled assets:

| | |
|---|---|
| 19. Equitable or future interests life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | Rights as beneficiary of Thomas A. Gassner Trust, an irrevocable spendthrift trust dated December 30, 1992. (Bankruptcy estate property limited to 25% of interest pursuant to Cal. Probate Code section 15300 et. seq and particularly section 15306.5.) |
| | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | Claim for legal malpractice against Richard A. Chan , his original bankruptcy attorney from 2010, for the failure to provide proper advice with regard to scheduling the right to receive distributions from the Thomas A. Gassner irrevocable trust as an asset of bankruptcy estate. <br><br> Claim for violation of discharge injunction of 11 U.S.C. section 524 against Scott Beattie, Jeremy Rutledge, Carol Gassner and Alfred Gassner.  (acquired post-petition) <br><br> Claim for violation of the automatic stay of 11 U.S.C. section 362 against Scott Beattie, Jeremy Rutledge, Laura Strombom , Carol Gassner and Alfred Gassner. (acquired post-petition) <br><br> Claim for reimbursement of monies expended to preserve trust distribution as an asset of the bankruptcy estate by defending against probate petition. (acquired post-petition) <br><br> Claim for breach of fiduciary duty as trustee of the Thomas A . Gassner irrevocable spendthrift trust against correct trustee Laura Strombom and former trustee Jeffery Bertlesen nominating Laura Strombom as successor trustee.  (acquired postpetition) |

3

10-27435; Amended Schedule B, Questions 19, 21, Dckt. 68.

        13.    All of Debtor's legal and equity interests in the TAG Trust became property of the Debtor's Bankruptcy Estate.

        14.    The shareholders of MEPCO are the Trust-Settlors, Debtor's sister, and Debtor.

The relief sought by Plaintiff-Trustee is stated in three causes of action, identified as Counts 1, 2, and 3 in the Complaint, which the court summarizes as follows:

**Count 1 -**

For the First Count, the Plaintiff-Trustee asserts that all legal and equitable rights and interests of the Debtor in the TAG Trust are property of the Bankruptcy Estate. Plaintiff-Trustee assets that Defendant-Strombom Trustee had actual notice knowledge of the commencement of Debtor's Bankruptcy Case. Plaintiff-Trustee asserts the right to an accounting by Defendant-Strombom Trustee and delivery to Plaintiff-Trustee the trust assets or the value thereof which are property of the Bankruptcy Estate.

**Count 2 -**

In Count 2, the Plaintiff-Trustee asserts that Defendant-Strombom Trustee has violated the automatic stay by suspending distribution of the TAG Trust assets that are property of the bankruptcy estate. Further, that by commencing a proceeding in the California Superior Court, Probate Division, for an order authorizing the sale of TAG Trust assets.

**Count 3 -**

In Count 3, Plaintiff-Trustee seeks the involuntary dissolution of MEPCO, asserting to hold 33 1/3% of the total outstanding sales of MEPCO. The involuntary dissolution is sought pursuant to California Corporations Code § 1800(a)(2) and (b)(5).

### SUMMARY JUDGMENT REQUESTED BY DEFENDANT MEPCO AND DEFENDANT-TRUST SETTLORS FOR COUNT 1 AND COUNT 3

Defendant-Movants seek partial summary judgment on Count 1, which seeks a judgment against Defendant-Strombom Trustee for an accounting and to distribute the TAG Trust assets to the Plaintiff-Trustee as the sole beneficiary (those interests being property of the Bankruptcy Estate). Defendant-Movants seek to defend Defendant-Strombom Trustee by asserting that the TAG Trust

4

1    is a "spendthrift trust, subject to the provisions of California Probate Code §§ 15300 to 15309.

2    Defendant-Movants specifically direct the court to California Probate Code § 15306.5, which

3    governs rights of creditors to enforce obligations against the rights of a beneficiary in a trust which

4    prohibits the voluntary or involuntary transfer of the beneficiary's interest (commonly called a

5    spendthrift trust) to not more than twenty-five percent (25%) of the payment that would otherwise

6    be made to or for the benefit of the beneficiary of the spendthrift trust.

7    Defendant-Movants also direct the court to the Supreme Court decision *Patterson v.*

8    *Shumate*, 504 U.S. 753, 760 (1992) in support of the Motion for Summary Judgment.

9    For Count 3, Defendant-Movants assert that summary judgment in their favor is mandated

10   because the Bankruptcy Estate does not have the right to seek the turnover of the TAG Trust assets.

11   Therefore, since the Trustee-Plaintiff cannot demand the turnover of the TAG Trust assets, the

12   Plaintiff-Trustee cannot seek an involuntary dissolution of MEPCO.

13   It is asserted that at best the Plaintiff-Trustee can seek only the twenty-five percent (25%)

14   of the value of the TAG Trust assets as a creditor could under applicable California trust law.

15   Additionally, even if the court should determine that the Plaintiff-Trustee could get her hands on

16   twenty-five percent of the TAG Trust's thirty-three percent of the MEPCO Stock (rather than merely

17   the value of such stock), that would be only 666 shares, such would not be a sufficient for Plaintiff-

18   Trustee to seek an involuntary dissolution pursuant to California Corporations Code § 1800(a)(2).

19                        **REVIEW OF TRUST DOCUMENTS**

20   A copy of the TAG Trust Agreement which is dated December 30, 1992 ("TAG Trust

21   Agreement") has been provided as Exhibit A in support of the Motion for Summary Judgment.

22   Dckt. 52. This court summaries relevant terms of the TAG Trust Agreement which include the

23   following:

24   A.        In the "Whereas" statements made in the TAG Trust Agreement, it is stated by
               Alfred Gassner and Carol Gassner (the Defendant-Trust Settlors) stated:

25
               1.       "WHEREAS, it is the intention of the Settlers to create an irrevocable trust
26                      for the primary benefit of THOMAS A. GASSNER, which trust shall be
                        known as the THOMAS A. GASSNER TRUST (hereinafter sometimes
27                      referred to as the "Trust");" TAG Trust Agreement, p. 1.

28             2.       "WHEREAS, for that purpose, the Settlers make an absolute and irrevocable

                                              5

> gift of two thousand (2,000) shares of the class "B" non-voting common stock of MEPCO LABEL SYSTEMS, A CALIFORNIA CORPORATION."
> *Id.*

B.     The TAG Trust Agreement then makes the following affirmative statement:

> NOW, THEREFORE, in consideration of the premises and by the Settlors' execution of this Agreement, the Settlors declare and establish the Trust, to be held by the Trustee in trust for the purposes and subject to all the terms, conditions and provisions of this Agreement; by the Trustee's execution of this Agreement, **the Trustee acknowledges receipt from the Settlers of the gift and agree to hold and administer it**, together with any other property of any kind which the Trustee may at any time hereafter receive from the Settlors, for the uses and purposes and subject to all of the terms, conditions and provisions of this Agreement.

> *Id.* (*Emphasis added*)

C.     The sole beneficiary of the TAG Trust is the Debtor. *Id.*, ¶ 2.1.

D.     Until the Debtor attains 50 years of age, the Trustee of the TAG Trust is authorized to distribute all the net income to Debtor monthly (or other convenient periodic payment but not less than once a year) such amounts as the Trustee deems necessary for Debtor's health, education, support, and maintenance. *Id.* ¶ 3.1.

E.     When the Debtor attains 50 years of age, the TAG Trust "**shall terminate and all of the assets shall be distribute to [Debtor] free of trust.**" *Id.* ¶ 3.2. (*Emphasis added*)

F.     If the Debtor dies before attaining the age of 50, then "the trust shall be distributed to [Debtor's] then living issue, if any, and if not, then to the living issue of Settlors...." *Id.*

G.     The Trust is "irrevocable," with the TAG Trust Agreement stating:

> This Trust is irrevocable. Neither the Trustee, nor the Settlers, nor any other person shall have the right to revoke, alter or amend this Agreement or any of its terms. The Settlors do hereby renounce, relinquish and disclaim any reversionary or remainder interest in the Trust estate.

> *Id.* Article V.

H.     The Powers of the trustee of the TAG Trust are to be exercised for the "sole benefit of the beneficiary," here the Debtor. *Id.* ¶ 6.1.

I.     The term "beneficiary," unless otherwise express stated, when used in the TAG Trust Agreement means the Debtor. *Id.* ¶ 9.1.

J.     Paragraph 9.3 contains the spendthrift provision for the TAG Trust Agreement. The language of this provision states (*Emphasis added*).

> 9.3   Spendthrift Provision. No **income or principal**

distributable or to become **distributable with respect to a separate trust** shall be transferable, assignable, or subject to being in any manner whatsoever anticipated, charged or encumbered **by any person beneficially interested in such separate trust,** or **subject to interference or control by any creditors of said person**, or subject to any claim for alimony or for the support of a spouse pursuant to a decree of separate maintenance or separation agreement, or to being taken or reached by any legal or equitable process in satisfaction of any debt, liability or obligation of said person prior to its receipt by said person; provided, that the provisions of this Section shall not prevent the exercise of, or transfer pursuant to the exercise of, any power of appointment granted hereunder.

In preceding paragraph 9.2 of the TAG Trust Agreement titled "Disclaimer," it makes reference to a person who is a beneficiary or a person who is otherwise interested in any separate trust. The reference to a "separate trust" is made in Article I of the TAG Trust Agreement, which states:

ARTICLE I
Designation of Successor Trustees

The Trustee, or Co-Trustees acting unanimously, of each separate trust, shall have the power to designate successor Trustees or Co-Trustees with respect to such trust while serving as Trustee; provided, however, that neither the Settlers nor any person deemed to be the Settlers shall serve as successor Trustee. In default of such exercise, and in .the event that GEORGE V. HARTMANN fails to qualify or ceases to act as Trustee, then JOHN DEGREGORI shall serve as Trustee.

This reference to "each separate trust" does not appear to be a reference that includes the Debtor, as the beneficiary of the trust. A word search of the TAG Trust Agreement for "separate trust" makes reference to other trusts, not the Debtor, who is the "beneficiary."

**STATE COURT PETITION ACTION COMMENCED**
**BY DEFENDANT-TRUST SETTLORS FOR**
**MODIFICATION OF IRREVOCABLE TRUST**

Filed as Exhibit C in support of the Motion is a copy of the Petition ("State Court Petition") filed by Defendant-Trust Settlors in the California Superior Court ("State Court Petition Action") for Modification of the TAG Trust. Dckt. 52 at 38. The State Court Petition has a filed date of June 7, 2016. The State Court Petition states the following grounds and relief, as summarized by this court, identified by paragraph number of the State Court Petition:

¶ 1.     The TAG Trust was intended to benefit Defendant-Trust Settlors' son, the Debtor.

7

¶ 2.　The TAG Trust and a similar one for Debtor's sister were set up for estate planning and business succession purposes, including:

(1) making gifts for estate planning purposes;

(2) to provide benefits for Defendant-Trust Settlor's son on the "understanding" that he would continue as a "key employee of MEPCO" until Debtor reached 50 years of age;

(3) to benefit Defendant-Trust Settlors and employees of MEPCO by maintaining strong management for MEPCO; and

(4) to provide a means for retaining and building Debtor's skills as an offer and key employee of MEPCO.

¶ 3.　That on or around June 2010, Debtor abandoned his position with MEPCO to pursue speculative pursuits, thereby "breaching the understanding he reached with [Defendant-Trust Settlors], MEPCO, and other Interested Persons [who are not identified] . . . ."

¶ 4.　Defendant-Trust Settlors assert, based on information and belief, that Debtor committed various wrongful acts to MEPCO, including:

(1)　Debtor's departure from and abandonment of his position with MEPCO;

(2)　Debtor's misappropriation of proprietary customer information;

(3)　Debtor's use of such proprietary customer information to interfere with MEPCO's business and benefit a competitor where Debtor was subsequently employed;

(4)　Debtor failed to disclose his interest in the TAG Trust when he filed bankruptcy in 2010; and

(5)　Other changes that will subsequently presented.

¶ 5.　Debtor seeks to inequitably requesting benefits from the TAG Trust despite his failure to carry out his terms of the "agreement" concerning the TAG Trust.

¶ 6.　Defendant-Trust Settlors seek to modify the TAG Trust to better conform with the "agreement" to fulfill the intent of setting up the irrevocable trust and to protect the interests of other members of the family.

¶ 7.　Defendant-Trust Settlors would never have established the irrevocable TAG Trust on the agreement of Debtor to remain with MEPCO.

¶ 14.　Around 2004 Debtor was named as president of MEPCO and his sister named as vice president.

¶ 15.　As Debtor's sister became more involved in MEPCO, Defendant-Trust Settlors state that Debtor came more hostile toward "family members."

¶ 16.　In the 2000's Debtor began speculating in "flipping homes," which negatively impacted his work ethic and devotion of time at MEPCO. Debtor cut his hours

1    working at MEPCO.

2    ¶ 17.    Debtor demanded an ownership interest in MEPCO around 2005-2007, threatening
         to leave if he was not given such an interest.  There were oral agreements which led
3        to giving such interests in the TAG Trust, on the "understanding" that Debtor would
         remain at MEPCO.
4

5    Though stating that this ownership interest was being done in 2005-2007 by putting such

6    interests in the TAG Trust, the TAG Trust Agreement is dated December 30, 1992 (more than two

7    decades earlier) and was originally funded with 2,000 shares of MEPCO Stock.

8
     ¶ 18.    On or about January 1, 2007, 2,000 shares of MEPCO stock and then on April 12,
9            2007 1,000 shares of MEPCO stock were transferred into the TAG Trust.

10   ¶ 20.    During 2008 to 2010 Debtor's time working at MEPCO continued to decrease, and
             in 2009 Debtor's sister was made co-president of MEPCO.
11
     ¶ 21.    Debtor's wife was employed at MEPCO and paid for full time work, while not
12           working full time and then stopping work altogether.  However, Debtor's wife
             continued to be paid commissions "in substantial part upon [Debtor's] increased
13           sales activity."

14   ¶ 22.    Debtor and his wife quit, without notice, their positions at MEPCO in June 2010.
             Then, several months later, Debtor began working for a competitor of MEPCO and
15           solicited MEPCO's customers to move to the competitor.

16   The Defendant-Trust Settlors continue in the State Court Petition that the purpose of making

17   the gifts of the MEPCO Stock and setting up the irrevocable trust, to maintain the family business,

18   would not be served if the TAG Trust is not modified.

19       Further, Defendant-Trust Settlors alleged that they made such desires known to their attorney

20   at the time but "their attorney did not execute the Trust in a manner which fully achieved their intent

21   and desires."  Further, though represented by an attorney, Defendant-Trust Settlors state that "they

22   were not advised, nor did they understand, that they could put conditional language in the [TAG

23   Trust] which would fully condition their gift on [Debtor's] completion of the desired period of

24   service." *Id.* ¶ 30.

25       Defendant-Trust Settlors assert that evidence of the oral agreements and understandings can

26   be demonstrated by Defendant-Trust Settlors family trust also created in 1992, which they amended

27   in 2007 with the assistance of another attorney, with such amendment showing this intent.  *Id.* ¶ 32.

28       The MEPCO Stock in the TAG Trust had a value, as of the filing of the State Court Petition,

9

of $416.67 per share. *Id.* ¶ 35.

When Defendant-Trust Settlors filed the State Court Petition and commenced the State Court Petition Action, they knew of Debtor's bankruptcy case, but assert that there were not notified of the bankruptcy case when it was filed in 2010. *Id.* ¶ 37. Further, that Defendant-Trust Settlors had knowledge when the State Court Petition Action was commenced that the Debtor's interests in the TAG Trust were not disclosed on the Schedules filed in Debtor's Bankruptcy case. *Id.*

Defendant-Trust Settlors then state they have learned of the bankruptcy and knowing that Debtor had not disclosed his interest in the TAG Trust on his bankruptcy schedules, that Defendant-Trust Settlors assert that judicial estoppel prevents Debtor from asserting that he had an interest in the TAG Trust. They further argue that his failure to disclose this asset is an admission that he had no interest in the TAG Trust. *Id.* ¶ 38.

## STANDING TO SEEK RELIEF AS TO COUNT 1

The federal courts are not a forum for the theoretical or one in which parties who do not have rights attempt to litigate on behalf of others who are not before the court (with limited exceptions to this rule, such as class action and other special representative proceedings authorized by Congress). Standing must be determined to exist before the court can proceed with the case. *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 771. (9th Cir. 2006)

One of the first things that a law student learns about American Jurisprudence is that the law does not condone the "officious intermeddler." One is not allowed to assert claims or rights in which he or she has no interest. In the federal courts, this is the Constitutional requirement of "standing."

> Article III of the Constitution confines federal courts to decisions of "Cases" or "Controversies." Standing to sue or defend is an aspect of the case-or-controversy requirement. (Citations omitted.) To qualify as a party with standing to litigate, a person must show, first and foremost, "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent.' (Citations omitted.)...Standing to defend on appeal in the place of an original defendant, no less than standing to sue, demands that the litigant possess 'a direct state in the outcome.' (Citations omitted.)

*Arizonans for Official English v. Arizona*, 520 U.S. 43, 64, 117 S.Ct. 1055 (1997).

Though neither party has identified the issue of standing, the court may raise it *sua sponte*,

Rule 12(h)(3), Federal Rules of Civil Procedure[1]. A person must have a legally protected interest, for which there is a direct stake in the outcome. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64, 117 S.Ct. 1055 (1997).

The standing requirement is not merely a "procedural issue," but a fundamental requirement arising under the Constitution.

In Count 1, Plaintiff-Trustee seeks relief against Defendant-Strombom Trustee for an accounting of the TAG Trust assets and then distribution of the assets, the Plaintiff-Trustee asserting that the Bankruptcy Estate is the sold beneficiary of the TAG Trust. No relief is sought from either Defendant-MEPCO or Defendant-Trust Settlors.

At the hearing, Defendant-Movants made it clear that they were not purporting to litigate on behalf of Defendant-Strombom Trustee, but that the Plaintiff-Trustee could not seek the turnover of the TAG Trust without including the Defendant-Movants because the Defendant-Movants also asserted an interest in the TAG Trust assets - the 2,000 shares of MEPCO stock.

In making this assertion, the Defendant-Movants highlight the substantive defect in the State Court Petition Action in which they seek a judgment that purports to state that no one other than the Defendant-Trust Settlors or the purchaser they desire (the limited liability company owned by their other son and daughter) have a right to the corpus of the TAG Trust - the 2,000 shares of MEPCO stock. But in the State Court Petition Action, even though they were aware of the Debtor's Bankruptcy Case, that Debtor had not disclosed his interest in the TAG Trust in the Bankruptcy Case, and that whatever interest he had was, at least in party, property of the Bankruptcy Estate, Defendant-Movants have sought to obtain either by settlement or adjudication against just the Debtor a judgment which would purport to state that there were no interests of the Bankruptcy Estate in the TAG Trust or trust assets.

///

///

---

[1] As made applicable to this Adversary Proceeding by Rule 7012, Federal Rules of Bankruptcy Procedure.

**RELEVANT CALIFORNIA LAW**
**PERTAINING TO SPENDTHRIFT TRUST**

The disputes between the Parties to this Adversary Proceeding and the related proceeding being prosecuted by Georgina Gassner, the late Debtor's spouse ("Debtor's Spouse"), centers on three specific statutes relating to spendthrift trusts and the abilities of creditor to get to the distributions of a beneficiary of a spendthrift trust. These are the California code sections recently addressed by the California Supreme Court in *Carmack v. Frealy* establishing the rights and interests of a bankruptcy trustee and estate in a debtor's interest in a spendthrift trust. (This court's review of that California Supreme Court decision is discussed below.)

The three statutory provisions limiting the protections provided by a spendthrift trust relevant to the issues now before this court are California Probate Code Sections 15301, 15306.5, and 15307, which provide (emphasis added):

§ 15301. Restraint on **transfer of principal**

> (a) **Except as provided in subdivision (b) and in Sections 15304 to 15307, inclusive**, if the trust instrument provides that a **beneficiary's interest in principal is not subject to voluntary or involuntary transfer**, the beneficiary's interest in principal may not be transferred and is **not subject to enforcement of a money judgment until paid to the beneficiary**.

> (b) **After an amount of principal has become due and payable** to the beneficiary under the trust instrument, upon petition to the court under Section 709.010 of the Code of Civil Procedure by a judgment creditor, **the court may make an order directing the trustee to satisfy the money judgment out of that principal amount**. The court in its discretion may issue an order directing the trustee to satisfy all or part of the judgment out of that principal amount.

**§ 15306.5.** Court order directing trustee to **satisfy judgments; payment to which beneficiary entitled; limitations**

> (a) **Notwithstanding a restraint on transfer of the beneficiary's interest** in the **trust under Section 15300** [restrain on transfer of income] **or 15301** [restrain on transfer of principal], and subject to the limitations of this section, upon a judgment creditor's petition under Section 709.010 of the Code of Civil Procedure, the court **may make an order directing the trustee to satisfy all or part of the judgment out of the payments to which the beneficiary is entitled under the trust instrument** or that the trustee, in the exercise of the trustee's discretion, has determined or determines in the future to pay to the beneficiary.

> (b) An order under this section **may not require** that the trustee pay in satisfaction of the judgment **an amount exceeding 25 percent of the payment** that otherwise would be made to, or for the benefit of, the beneficiary.
> . . .

12

(e) If the trust gives the trustee discretion over the payment of either principal or income of a trust, or both, nothing in this section affects or limits that discretion in any manner. The trustee has no duty to oppose a petition to satisfy a judgment under this section or to make any claim for exemption on behalf of the beneficiary. The trustee is not liable for any action taken, or omitted to be taken, in compliance with any court order made under this section.

(f) Subject to subdivision (d), the aggregate of all orders for satisfaction of money judgments against the beneficiary's interest in the trust may not exceed 25 percent of the payment that otherwise would be made to, or for the benefit of, the beneficiary.

**§ 15307. Income in excess of amount for education and support; application to creditors' claim**

**Notwithstanding a restraint on transfer of a beneficiary's interest in the trust under Section 15300 or 15301**, any amount to which the beneficiary is entitled under the trust instrument or that the trustee, in the exercise of the trustee's discretion, has determined to pay to the beneficiary in excess of the amount that is or will be necessary for the education and support of the beneficiary may be applied to the satisfaction of a money judgment against the beneficiary. **Upon the judgment creditor's petition under Section 709.010 of the Code of Civil Procedure, the court may make an order directing the trustee to satisfy all or part of the judgment out of the beneficiary's interest in the trust.**

California Code of Civil Procedure § 709.010 provides that a judgment creditor may petition the court having jurisdiction over the administration of a trust to have a judgment debtor beneficiary's interest in the trust applied to satisfaction of a money judgment. The application of a judgment debtor's beneficiary's interest is expressly subject to the limitations provided in California Probate Code §§ 15300 et seq. (relevant provisions to this Adversary Proceeding and Motion stated above).

## PROPERTY OF THE BANKRUPTCY ESTATE
## INTEREST IN TRUSTS

Consideration of what constitutes property of a bankruptcy estate begins with federal law - 11 U.S.C. § 541 (which incorporates state law). Congress first provides in 11 U.S.C. § 541(a) a broad definition of property of the bankruptcy estate:

§ 541. Property of the estate

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

13

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

    (A) under the sole, equal, or joint management and control of the debtor; or

    (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

(3) Any interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.

(4) Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.

(5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

    (A) by bequest, devise, or inheritance;

    (B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or

    (C) as a beneficiary of a life insurance policy or of a death benefit plan.

(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

(7) Any interest in property that the estate acquires after the commencement of the case.

Congress then pares back this broad reach for property of the Bankruptcy Estate, providing in 11 U.S.C. § 541, as pertinent to the interest in the TAG Trust:

(c)
(1) **Except as provided in paragraph (2)** of this subsection, **an interest of the debtor** in property **becomes property of the estate** under subsection (a)(1), (a)(2), or (a)(5) of this section **notwithstanding any** provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

    (A) that restricts or conditions transfer of such interest by the debtor; or

    (B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

(2) A **restriction on the transfer of a beneficial interest of the debtor in a trust**

1    that is **enforceable under applicable nonbankruptcy** law is enforceable in a case

2    under this title.

3        The U.S. Supreme Court has held that the term "property," as used in the former Bankruptcy

4    Act, must be "construed most generously and an interest is not outside its reach because it is novel

5    or contingent or because enjoyment must be postponed." *Segal v. Rochelle*, 382 U.S. 375, 379

6    (1966). "Every conceivable interest of the debtor, future, nonpossessory, contingent, speculative,

7    and derivative, is within the reach of § 541." *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993).

8        The Ninth Circuit Court of Appeals repeated this broad scope of property of the bankruptcy

9    estate, including contingent interests, in *In re Neuton*, 922 F.2d 1379 (9th Cir. 1990). The facts in

10   Neuton were:

11       A.    The debtor filed bankruptcy on November 12, 1987.

12       B.    The scheduled assets included a beneficial interest in a trust, for which the debtor did
               not have a current right to receive distributions (it being contingent on the death of
13             the senior beneficiary receiving distributions at the time the case was filed).

14       C.    On December 18, 1987 - thirty-six days after the bankruptcy case had been filed - the
               senior beneficiary died and the debtor became entitled to receive distributions from
15             the trust.

16       D.    The Chapter 7 trustee in the Neuton case objected to any exemption claimed in the
               distributions by the debtor in any amounts in excess of the $1,135.00 exemption
17             claimed by that debtor.
         E.    The debtor responded that: (1) since it was a spendthrift trust, debtor's interest was
18             excluded from the bankruptcy estate, and (2) since debtor's interest was contingent
               on the death of the senior beneficiary, then it could not be property of the bankruptcy
19             estate.

20   *In re Neuton*, 922 F.2d 1379, 1381 (9th Cir. 1990)

21       The Ninth Circuit Court of Appeals first addressed the inclusion of contingent rights as

22   property of a bankruptcy estate, including contingent interests in trusts.

23            We agree with the BAP's position. Whether a debtor's contingent interests
         were acquired by the bankrupt estate was a thorny issue under the old Bankruptcy
24       Act. In a landmark decision which largely inspired the new Code, the Supreme Court
         held that "the term 'property' has been construed most generously and an interest is
25       not outside its reach because it is novel or contingent or because enjoyment must be
         postponed." *Segal v. Rochelle*, 382 U.S. 375, 379, 15 L. Ed. 2d 428, 86 S. Ct. 511
26       (1966).

27            Accordingly, contingent interests of the type at issue in this case typically
         have been held to be property of the bankrupt estate. For example, in *In re Ryerson*,
28       this court affirmed the BAP's holding that money to which the debtor became entitled

15

eight months after filing for bankruptcy should be included in the estate, notwithstanding the fact that at the time of filing the debtor had an unvested, contingent interest. 739 F.2d 1423, 1425 (9th Cir. 1984). Similarly, in *In re Dias* the bankruptcy court found that "a beneficial interest in a trust is an equitable interest under § 541(a)(1)" despite the fact that at the time of filing it was contingent. 37 Bankr. 584, 586-87 (Bankr. D. Idaho 1984). *See also In re Bialac*, 712 F.2d 426, 431 (9th Cir. 1983) ("The courts have consistently said that options or contingent interests are property of the bankruptcy estate under section 541"); *In re Young*, 93 Bankr. 590 (Bankr. S.D. Ohio 1988) (unliquidated or contingent claims are property of the estate); *In re Turner*, 29 Bankr. 628 (Bankr. D. Me. 1983) (contingent interest in earnest money deposit in escrow account belongs to the estate). Cf. Restatement (2d) of Trusts § 162 ("The mere fact that the interest of the beneficiary is contingent and not vested does not preclude creditors of the beneficiary from reaching it").

*In re Neuton*, 922 F.2d at 1382-83

The Ninth Circuit Panel in *Neuton* then addressed the California law exception, Cal. Prob. § 15306.5, for the twenty-five percent (25%) interest in a spendthrift trust which does not "enjoy" the protection from creditor's claims or exclusion from property of the bankruptcy estate.

Thus, the Probate Code provides that despite such restraints a creditor may obtain an "order directing the trustee to satisfy all or part of the judgment out of the payment to which the beneficiary is entitled under the trust instrument," so long as the payment does not "exceed[] 25% of the payment that otherwise would be made to . . . the beneficiary." Cal. Prob. Code § 15306.5. In other words, the spendthrift restriction fully protects only 75% of the interest in the trust. Because the trustee enjoys the power of a hypothetical judgment creditor, 11 U.S.C. § 544(a)(1), we agree with the BAP that the remaining one-fourth is not excluded from the estate pursuant to 11 U.S.C. § 541(c)(2). In short, the bankruptcy estate possesses an income interest in one-fourth of the payments due to Neuton (subject to further applicable conditions, *see infra.*).

*Id.* at 1383.

The Ninth Circuit Court of Appeals revisited whether the twenty-five percent (25%) cap for creditors to reach a debtor's interest in a spendthrift trust provided under California Probate § 15206.5 also constitutes the ability of a bankruptcy trustee to reach more than that twenty-five percent under California Probate § 15301(b) and § 15307 in *Frealy v. Reynolds*, 779 F.3d 1028 (9th Cir. 2015). The Ninth Circuit, *per curiam*, certified this question to the California Supreme Court.

The California Supreme Court issued its decision on the certified question in *Carmack v. Frealy*, 2 Cal.5th 844 (2017). The California Supreme Court's conclusion is stated as:

Conclusion

We conclude that a bankruptcy trustee, standing as a hypothetical judgment creditor, can reach a beneficiary's interest in a trust that pays entirely out of principal in two ways. **It may reach up to the full amount of any distributions of principal that**

**are currently due and payable to the beneficiary**, unless the trust instrument specifies that those distributions are for the beneficiary's support or education and the beneficiary needs those distributions for either purpose. Separately, **the bankruptcy trustee can reach up to 25 percent of any anticipated payments made to, or** for the benefit of, the beneficiary, reduced to the extent necessary by the support needs of the beneficiary and any dependents.

*Carmack v. Frealy*, 2 Cal.5th at 857. The "currently due and payable" means only those amounts at the time a creditor is petitioning a court pursuant to California Probate § 15301(b) to levy on the principal portion of a spendthrift trust.

> "After an amount of principal has become due and payable...." (Italics added.) This clause indicates that timing is critical: **section 15301(b) reaches only those amounts which are presently set to be paid to the beneficiary**. The provision thus requires an amount of principal to "ha[ve] become" due to the beneficiary, at which point upon a creditor's petition the court may enter an order "directing the trustee to satisfy the money judgment out of that principal amount." (§ 15301(b), italics added.) In other words, under this provision **creditors may reach the principal already set to be distributed and only up to the extent of that distribution**. Such principal has served its trust purposes, and in many (but not all) cases, the distribution may signal that the trust is ending. **Section 15301(b) makes these assets, and these assets only, fair game to creditors**.

*Id.* at 851 (emphasis added). As discussed by the California Supreme Court, such interpretation makes "fair game" for creditors amounts which the trust provides are presently disburseable, but the trustee of the trust is withholding the money/assets to preclude creditors from validly executing against them once they would be in the beneficiary's hands. See discussion, *Id.* at 856.

The California Supreme Court then concluded that the twenty-five percent (25%) limitation also applied to what can be reached by a creditor pursuant to California Probate § 15307. *Id.* at 855. The Supreme Court concluded that a perception that the twenty-five percent (25%) limitation applies to California Probate § 15307 and that the failure of it to be expressly stated in the statute,

> [t]hat section 15307 reflects a drafting error. Before the 1986 revisions, spendthrift trusts were governed by three key provisions [detailed discussion of prior statutes, Law Revision Commission recommendations, and enactment of current statutes] . . .
>
> [I]n light of this history, we decline to adopt an interpretation of section 15307 that simply undoes the limitations on general creditors that section 15306.5 sets forth in a set of specific and carefully calibrated provisions. **We conclude instead that the ultimate enactment of section 15307 without apparent limitations on the reach of general creditors was inadvertent. The Legislature plainly intended general creditors to be limited to 25 percent of distributions from the trust.**

*Id.* at 854-855 (emphasis added).

17

After receiving the California Supreme Court's ruling in *Carmack*, the Ninth Circuit remanded *Frealy v. Reynolds* to the trial court, ordering:

> Based on the California Supreme Court opinion, we now **hold that a bankruptcy estate is entitled to the full amount of spendthrift trust distributions due to be paid as of the petition date**. *See Carmack v. Reynolds*, 2 Cal. 5th 844, 215 Cal. Rptr. 3d 749, 391 P.3d 625, 628 (Cal. 2017); Cal. Prob. Code § 15301(b). But the estate may not access any portion of that money the beneficiary needs for his support or education, as long as the trust instrument specifies that the funds are for that purpose. *See Carmack*, 391 P.3d at 629; Cal. Prob. Code § 15302. The estate may also **reach 25 percent** of expected **future payments from the spendthrift trust**, reduced by the amount the beneficiary needs to support himself and his dependents. *See Carmack*, 391 P.3d at 632; Cal. Prob. Code § 15306.5.

*Frealy v. Reynolds (In re Reynolds)*, 867 F.3d 1119, 1120 (9th Cir. 2017). *Emphasis added*.

The Plaintiff-Trustee argues that based on the California Supreme Court's ruling in *Carmack* Defendant-Movants' arguments fail and the bankruptcy estate includes all rights and interests based upon the condition subsequent - Debtor achieving the age of 50 on July 2, 2016. Further, that any actions taken by Defendant-Settlors to try and reduce the Debtor's and Bankruptcy Estate's interest in the Trust is void as being in violation of the automatic stay.

The court restates the Plaintiff-Trustee's analysis on this point as stated by the Plaintiff-Trustee to insure that it is accurately and fully stated in this Decision:

> It may be true that on the date of commencement of the Debtor's bankruptcy case the reach of the Trustee might have been limited to 25 percent of expected distribution. *Id.* at 857. But that changed upon the Debtor's reaching age fifty (50) on July 2, 2016. Payment in full to creditors is required under a spendthrift trust provision once "principal has become due and payable (but has not yet been distributed)," so long as the distribution is not specified for a beneficiary's support or education. *Carmack v. Reynolds*, 2 Cal. 5th 844, 856 (2017).[1]
>
> > 1. Footnote 1 in the Opposition addresses the application of the automatic stay, which continues in full force and effect for undisclosed assets, which undisclosed assets are not automatically abandoned upon the closing of the bankruptcy case.

The Plaintiff-Trustee's argument goes to the effect of a condition subsequent occurring with respect to an interest that is property of the bankruptcy estate. Thus, if a debtor was a contingent beneficiary of a trust, say that the condition subsequent to the debtor being entitled to payment was the death of a senior beneficiary, that contingent right to distributions from trust is property of the bankruptcy estate. If the condition subsequent is satisfied while the contingent right is property of

1  the bankruptcy estate, then the bankruptcy estate has the right to receive the distributions.

2  The Plaintiff-Trustee further argues that if the Bankruptcy Estate only acquired the 25%

3  interest, it has taken an assignment of the other 75% interest from Georgene Gassner, the Debtor's

4  spouse, ("Spouse") with said spouse asserting she obtained those interests in the TAG Trust upon

5  the Debtor's passing.  The court issued its order in the Debtor's Bankruptcy Case approving the

6  Settlement between the Trustee and Spouse on October 1, 2019.  10-27435; Order, Dckt. 175.  The

7  Settlement Agreement is filed as Exhibit A.  *Id.*; Dckt. 164.  Under the Settlement:

8      A.    All legal and equitable rights of Spouse in the MEPCO Stock and rights to seek
9                dissolution of MEPCO are assigned to the Plaintiff-Trustee.  The Settlement
                 Agreement provides for a 75% to Bankruptcy7 Estate and 25% to the Spouse
10                distribution of the net proceeds received in connection with the MEPCO Stock.

11      B.    The Plaintiff-Trustee has assigned all rights and claims for alleged violations of the
                 automatic stay relating to the MEPCO Stock are assigned to the Spouse.  The
12                Settlement Agreement provides for a 75% to the Spouse and 25% to the Bankruptcy
                 Estate distribution of the net proceeds in connection with the stay violation claims.

13  *Id.*; Settlement Agreement paragraphs 2 and 3.

14

15  ### PROPERTY OF THE BANKRUPTCY ESTATE
   ### IN DEBTOR'S BANKRUPTCY CASE

16  Beginning with federal law, 11 U.S.C. § 541(a) of the Bankruptcy Code provides that the

17  commencement of a bankruptcy case creates the bankruptcy estate and that bankruptcy estate is

18  comprised on all legal or equitable interests of the debtor, including community property interests,

19  as of the commencement of the case.  Additionally, the bankruptcy estate includes: (1) transfers of

20  property the trustee recovers post-petition; (2) inheritances, bequests, death benefit, life insurance

21  benefits that the debtor acquires or becomes entitled to within 180 days of the commencement of

22  the bankruptcy case; (3) proceeds, products, offspring, rents, or profits of or from property of the

23  bankruptcy estate; and (7) any interest in property that the bankruptcy estate acquires after the

24  commencement of the case.  11 U.S.C. § 541(a)(3)-(7).

25  Debtor commenced his bankruptcy case on March 25, 2010, and the Bankruptcy Estate in

26  Debtor's Case was created that day.  All of the property described in 11 U.S.C. § 541(a) became

27  property of the Bankruptcy Estate and no other assets subsequently acquired by the Debtor, except

28  as provided in 11 U.S.C. § 541(a)(5) and (6).

1    Here, at issue is the interest of the Debtor in the TAG Trust.  If the interest were "merely"

2    a contingent trust interest for which distributions were subject to a later date event occurring, such

3    as the death of a senior beneficiary or the debtor achieving a certain age, then that entire contingent

4    right would be property of the bankruptcy estate for the bankruptcy trustee to administer.  If the

5    contingency is satisfied while the trust interest is property of the bankruptcy estate, then the

6    distribution comes into the bankruptcy estate.  Or, a trustee could sell such contingent beneficial

7    interest, allowing the purchase to value and take the risk of the contingency.

8    However, Debtor's interest in the TAG Trust is asserted to not be a "mere" contingent

9    interest.  True, there is a contingency of 50 years of age for the TAG Trust to terminate

10   automatically and for the TAG Trust Assets to be distributed to Debtor.  In addition, it is asserted

11   to be a spendthrift trust, for which the Debtor's interests are partially protected from the claims of

12   creditors.

13   Congress has created special provisions concerning what is property of the bankruptcy estate

14   and what is excluded from becoming property of the bankruptcy estate.  In 11 U.S.C. § 541(c)(2)

15   Congress provides that:

16       (2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is
         enforceable under applicable nonbankruptcy law is enforceable in a case under this
17       title.

18   This provision does not merely provide that all of a debtor's interest in a spendthrift trust is

19   property of the bankruptcy estate to be subsequently abandoned by the trustee and thereby removed

20   from the bankruptcy estate.  Rather, it provides that it never becomes property of the bankruptcy

21   estate.[2]  Thus, if the TAG Trust is a spendthrift trust as to the interests of Debtor, then to the extent

22   that Debtor's interest is protected from transfer, 11 U.S.C. § 541(c)(2) would preclude that protected

23   interest from being included in the Bankruptcy Estate in this case.  If not included in the Bankruptcy

24   Estate, then the subsequent satisfaction of a contingency (here Debtor's age) does not transfer it into

25

26       [2] " Spendthrift trusts are a particular type of express trust. They require specific focus because
     Code section 541(c)(2) excludes the interest of the debtor-beneficiary in spendthrift trusts from property
27   of the estate by virtue of the following statutory language: 'A restriction on the transfer of a beneficial
     interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a
28   case under this title.' "  5 Collier on Bankruptcy P 541.27 (16th 2019)

1  the Bankruptcy Estate.

2  **Property of this Bankruptcy Estate**

3      In the Reply filed by Defendant-Movants, it is asserted that "Everyone is agreed that the

4  [TAG Trust] is a spendthrift trust." Reply, p. 19:7; Dckt. 67. Further, "Given that, the Trustee has

5  raised no grounds nor stated any triable issue of fact that 11 U.S.C. § 541(c)(2) should not apply,

6  this Court should find that the [TAG Trust] is not an asset of the Thomas Gassner Bankruptcy

7  Estate." *Id.*, p. 19:7-10.

8      First, the phraseology used by Defendant-Movants is not precise. Nobody is asserting that

9  the TAG Trust is property of the Bankruptcy Estate, but the Plaintiff-Trustee asserts that all of

10  Debtor's interests as a beneficiary of the TAG Trust is property of the Bankruptcy Estate.

11      Second, the Plaintiff-Trustee has asserted that the TAG Trust is not a spendthrift trust as it

12  applies to the Debtor's interest in the TAG Trust. As the court discusses above in reading the TAG

13  Trust Agreement that was executed in 1992, and Plaintiff-Trustee asserts in the Opposition, the plain

14  language of the spendthrift provision of the Trust Agreement does not state that it is the interests of

15  Debtor as a beneficiary are subject to transfer limitations. Paragraph 9.3 of the Trust Agreement

16  states:

17          9.3 Spendthrift Provision. <u>No income or principal distributable or to become
            distributable</u> **with respect to a separate trust shall be transferable, assignable, or**
18          **subject to being in any manner whatsoever anticipated, charged or encumbered**
            <u>by any person beneficially interested in such separate trust</u>, or subject to interference
19          or control by any creditors of said person, or subject to any claim for alimony or for
            the support of a spouse pursuant to a decree of separate maintenance or separation
20          agreement, or to being taken or reached by any legal or equitable process in
            satisfaction of any debt, liability or obligation of said person prior to its receipt by
21          said person; provided, that the provisions of this Section shall not prevent the
            exercise of, or transfer pursuant to the exercise of, any power of appointment granted
22          hereunder.

23  Exhibit A, Dckt. 52 (emphasis added). This language discusses distributions with respect to a

24  "separate trust." That term is not defined in the Trust Agreement. The term "separate trust" is used

25  in several other provisions of the Trust Agreement, appearing to referencing a trust different than

26  the TAG Trust.

27      The Plaintiff-Trustee has put squarely in the lap of the Defendants and the court whether

28  there are limitations on the transfer of Debtor's interests as a beneficiary of the TAG Trust. The

1    court has not been provided with evidence and a legal explanation of the language to state that

2    Paragraph 9.3 is a spendthrift provision as to Debtor's interests in the TAG Trust.  Nor has the

3    Plaintiff-Trustee provided the court with evidence and a legal explanation that the language in

4    Paragraph could not be read, or properly reformed as discussed by the California Supreme Court in

5    *Carmack v. Reynolds*.

6    **Property of the Bankruptcy Estate if**
     **The TAG Trust is a Spendthrift Trust**
7    **As to the Beneficial Interest of Debtor**

8        Plaintiff-Trustee argues that the California Supreme Court in *Carmack v. Reynolds* holds that

9    there is no "absolute cap" of twenty-five percent (25%) on a bankruptcy estate's access to a the

10   interests of a beneficiary under a spendthrift trust, but merely that the limit applies each time the

11   creditor has the right to hit the beneficiary's interest.  Therefore, the Plaintiff-Trustee argues that all

12   of the Debtor's interest in the TAG Trust is in the Bankruptcy Estate and upon the Debtor reaching

13   the 50 years of age contingency, the TAG Trust terminated as provided in Paragraph 3.2 of the Trust

14   Agreement (Exhibit A, Dckt. 52), all of the assets were to be distributed to the beneficiary, and since

15   the Debtor's interest in the TAG Trust were property of the Bankruptcy Estate, the Bankruptcy

16   Estate gets all of the TAG Trust assets.

17       The court does not concur in the Plaintiff-Trustee's reading of federal law, California law,

18   and the Supreme Court ruling in *Carmack v. Reynolds*.

19       First, as to federal law, 11 U.S.C. § 541(a) and (c)(2) clearly identify what becomes property

20   of the bankruptcy estate.  While 11 U.S.C. § 541(a) is very broad and includes contingent rights and

21   interests, 11 U.S.C. § 541(c)(2) precludes a beneficiary's interest in a spendthrift trust from ever

22   being part of the bankruptcy estate to the extent that such spendthrift provision is enforceable under

23   applicable nonbankruptcy law.

24       The provisions of 11 U.S.C. § 541(c)(2) do not merely state that a trustee may not administer

25   a debtor's interest in a spendthrift trust to the extent a creditor would under applicable

26   nonbankruptcy law.  Rather, it expressly excludes and prevents such protected spendthrift interests

27   from ever becoming property of the bankruptcy estate.  Since it never becomes property of the

28   bankruptcy estate, the post-petition satisfaction of the condition subsequent does not result in it

becoming property of the bankruptcy estate because the bankruptcy estate did not include the conditional interest.

As clearly stated by the California Supreme Court in *Carmack v. Reynolds*, California law does not render all of the interests of the beneficiary of a spendthrift trust protected from claims of judgment creditors.  In *Carmack*, the Supreme Court was addressing what property of a spendthrift trust would become property of a bankruptcy estate.  The California Supreme Court identified three specific California Probate law exceptions to the spendthrift trust protections, those being:

(1) Cal. Prob. § 15301, enforcement against any principal amount of the trust for distribution after it becomes due and payable,

(2) Cal. Prob. § 15306.5, allowing a court to order an amount not exceeding twenty-five percent (25%) of a principal or income distribution, and

(3) Cal. Prob. § 15307

allowing a court to order the payment of any amount of distribution from the spendthrift trust to which the beneficiary is entitled, that is in excess of amounts necessary and support, to satisfy a judgment obligation.

The California Supreme Court has concluded that twenty-five percent (25%) limitation applies in context of California Probate Code § 15306.5 and § 15307, correcting the clerical drafting error in *Carmack*.  Further, the Supreme Court has clearly stated that these provisions are to be interpreted consistent with the other provisions - applying to monies that have been disbursed to the beneficiary or are due to be distributed to the beneficiary but the trustee is holding on to the money or assets.

If the TAG Trust is a spendthrift trust as to the Debtor's interest, then the Plaintiff-Trustee is asserting that due to California Probate Code § 15206.5 and §  15307, twenty-five percent (25%) of the Debtor's interest is property of the bankruptcy estate as of the commencement of this case. The age contingency was satisfied, the TAG Trust was terminated, and the 2,000 shares of MEPCO Stock and any other trust assets disbursed - with 25% to the Bankruptcy Estate (500 shares of MEPCO Stock and 25% of any other assets) and 75% to the Debtor or successor of Debtor.

/ / /

**Debtor's 75% Interest in
the TAG Trust**

The Plaintiff-Trustee asserts that the Bankruptcy Estate has been assigned the other 75% of the MEPCO Stock and any other assets of the TAG Trust by the successor in interest to Debtor - Georgene Gassner, Debtor's spouse at the time of his death. This assignment was made as part of a post-petition settlement with Georgene Gassner that has been approved by the court in the Debtor's Bankruptcy Case.

In their Reply, Defendant-MEPCO and Defendant-Trust Settlors assert that such could not be property of the Bankruptcy Estate, stating:

> Finally, the Trustee's claim that she has received an "assignment" of the Debtor's rights under the TRUST in September 2019 do not alter the determination of what is property of the estate in any way. As to the portion assigned, the Trustee simply stands in Georgene Gassner's shoes, as an assignee of Debtor's rights as to any portion of the Trust which is not property of the estate. To claim otherwise flies in the face of this Court's statements in approving the Settlement, and is ineffective as a matter of law.

Reply, p. 19:21-26; Dckt. 67.

The court cannot concur with this legal conclusion advance by the Defendant-Movants. The Bankruptcy Code clearly provides that any assets obtained after the commencement of the case by the bankruptcy estate are property of the bankruptcy estate. 11 U.S.C. § 541(a)(7). This is similar to a trustee settling a dispute and having a third party make a monetary of property transfer to the bankruptcy estate as part of the settlement.

Here, Georgene Gassner has transferred whatever rights and interests she and the Debtor's family had in the 75% of the Debtor's interest in the TAG Trust. In the Settlement Agreement, Georgene Gassner states that as the successor trustee of the Thomas Gassner and Georgene Gassner Family Trust ("Debtor Family Trust), which held the Debtor's 75% interest in the TAG Trust, she could and was transferring those rights to the Plaintiff-Trustee for the Bankruptcy Estate. Settlement Agreement, see Recital D and ¶ 2; Exhibit A, Dckt. 164.

Any and all interests in the TAG Trust of the Debtor that were held by Georgene Gassner or the Debtor Family Trust are now property of the Bankruptcy Estate.

/ / /

**DETERMINATION OF FACTS NOT IN DISPUTE**
**AND**
**FURTHER PROCEEDINGS**

At this juncture, determination of the requests by MEPCO and Defendant-Trust Settlors that the Bankruptcy Estate is not the owner of the 2,000 MEPCO Stock and that the Bankruptcy Estate is entitled to only the value of 15% of the MEPCO Stock cannot be summarily determined. That is because there first must be a determination of the terms of the TAG Trust Agreement. As written, the Bankruptcy Estate has all 2,000 shares of the MEPCO Stock. As argued by the Defendant-Trust Settlors and MEPCO, the Bankruptcy Estate has no shares and no right to any value for any assets of the TAG Trust.

There must be an adjudication of what the terms of the TAG Trust Agreement are and whether Defendant-Trust Settlors can have the TAG Trust Agreement reformed under applicable California law.

This federal court has the federal court jurisdiction to determine the interests of the Bankruptcy Estate in the TAG Trust and the property to be distributed from the TAG Trust. It is also possible for this federal court to allow the determination of property of the Bankruptcy Estate to be made by the State Court, but a key factor in consideration of such abstention is whether the necessary parties can diligently prosecute such state court action to a prompt conclusion. Will reverting to a State Court proceeding unduly delay the administration of the bankruptcy estate.

If such abstention is timely requested, the court will address that in the context of such proceeding. However, the facts and evidence presented to the court in this Adversary Proceeding and Related Adversary Proceeding indicate that the State Court Petition Action is not able to be diligently prosecuted to a prompt conclusion. Defendant-Trust Settlors filed the State Court Petition on June 7, 2016 - 3 years, 7 months, and 7 days before the hearing on this Summary Judgment Motion. The State Court Petition clearly disclosed Defendant-Trust Settlors' knowledge of the Bankruptcy Case and that the TAG Trust interests may be property the Bankruptcy Estate. The Defendant-Trust Settlors did not seek relief from the stay, did not amend the State Court Petition to include the Plaintiff-Trustee for the Bankruptcy Estate, and have not attempted to have determined the rights and interests (if any) of the Bankruptcy Estate in the TAG Trust. The

1   Defendant-Debtor are now before this court more than 3 and ½ years after the State Court Petition

2   was filed only in response to the Complaint filed by the Plaintiff-Trustee.

3          It may be that this Complaint is in the nature of determining the respective that the Plaintiff-

4   Trustee disputes the assertions that the TAG Trust Agreement may be reformed under applicable

5   California Law, there is not an express cause of action for this court to determine the rights and

6   interests of the Bankruptcy Estate over the claims of the Defendant-Trust Settlors.

7          Defendant-Trust Settlors have asserted an interest in the TAG Trust assets in Proof of Claim

8   No. 3-1 filed in Debtor's Bankruptcy Case in claiming a setoff of the claim against the 2,000 shares

9   of MEPCO Stock.  This claim and right of offset is based on the State Court Petition, which is an

10   Attachment to Proof of Claim No. 3-1. Possibly the issue of the TAG Trust Agreement is addressed

11   through a claim objection.

12          Alternatively, Defendant-Trust Settlors could file a counter-claim to reform the TAG Trust

13   Agreement which would then result in the contingent interests of the Debtor that became property

14   of the Bankruptcy Estate (whether at the filing of the case or subsequently assigned if it is a

15   spendthrift trust) to have terminated.

16          Until it is determined what are the actual terms of the TAG Trust Agreement and what

17   interests, if any, are property of the Bankruptcy Estate, summary judgment for the relief requested

18   is premature and cannot be granted.

19          The Motion is Denied without prejudice.

20          The court does not make a determination of facts for which there is no bona fide dispute at

21   this time.  The parties, if they are prosecuting their respective positions in good faith and consistent

22   with the certifications made pursuant to Federal Rule of Bankruptcy Procedure 9011, the parties

23   themselves should be able to generate a joint statement of undisputed facts.  (With the tentative

24   ruling, the court included a draft of such facts that appeared not in *bona fide* dispute.)

25   **Dated:**  January 22, 2020        **By the Court**

26

27

28

Ronald H. Sargis, Judge
United States Bankruptcy Court

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

| **Debtor**(s) | **Attorney(s) for the Debtor**(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| J. Russell Cunningham, Esq.<br>Kristen Ditlevesen, Esq.<br>1830 15th Street<br>Sacramento, CA 95811 | Scott G. Beattie, Esq.<br>3443 Deer Park Drive, #A<br>Stockton, CA 95219 |
| Charles L. Hastings, Esq.<br>4568 Feather River Drive, #A<br>Stockton, CA 95219 | |